UNITED STATES of America,
Appellee,

v.

Mario RIVERA, Defendant-Appellant.

No. 409, Docket 28288.

United States Court of Appeals
Second Circuit.

Argued June 18, 1963.

Decided Aug. 19, 1963.

Jack D. Samuels, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Arnold Enker, Asst. U. S. Atty., on the brief), for appellee.

Herbert S. Siegal, New York City, for defendant-appellant.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and BRYAN, District Judge.

FREDERICK van PELT BRYAN, District Judge.

On June 11, 1963 appellant Rivera was convicted on a two count indictment after trial to the court without a jury in the United States District Court for the Southern District of New York. The first count charged possession of cocaine in violation of 21 U.S.C. § 173, and the second, possession of marijuana in violation of 21 U.S.C. § 176a. Rivera was sentenced to five years on each count, the sentences to run concurrently. He now appeals from the judgment of conviction.

The questions raised on the appeal relate solely to the denial of a motion by Rivera to suppress, and the admission at the trial, over objection, of evidence consisting of cocaine in a glassine envelope taken from Rivera's person at the time of his arrest and marijuana in a paper bag taken from his apartment shortly thereafter. The arrest was made by federal narcotics agents acting without a warrant. Rivera contends that the arrest was without probable cause and that the evidence which he moved to suppress was therefore seized in violation of his rights under the Fourth Amendment.

When the case was assigned to Judge Tyler for trial he first heard Rivera's motion to suppress. At the hearing on the motion Kreppein, one of the arresting agents, was the only witness. He testified in substance as follows:

Rivera was arrested by Kreppein and his partner, Agent Bailey, without a warrant at 3 a. m. on March 1, 1963 as he drove his Buick out of the Sinclair Garage on 173rd Street near Longfellow Avenue in the Bronx.

Rivera had been under observation by the agents for at least a month. On January 29, 1963 Kreppein, Bailey and other agents, had observed him in the company of a known interstate trafficker in narcotics. The next morning Bailey showed Kreppein a memorandum from Agents Wurms and Thompson of the Washington office of the Bureau of Narcotics dated January 20, 1963 relating to their investigation concerning one Warren Dora Miller. The memorandum stated that the Washington agents had received information from a confidential source that on January 13, 1963 Miller and a man named Mario had brought a large quantity of narcotics from New York to Washington in Mario's new Buick, which had been delivered to one Black Sammy; that Mario had returned to New York on January 15 in the Buick; and that Miller was a bartender at the Black Orchid Bar in New York where

Mario "hangs out." There followed a full physical description of Mario. Bailey advised Kreppein that, as a result of investigation, he had determined that Mario was Mario Rivera, the appellant.

On that day Kreppein and Bailey began to work together as partners. Kreppein had Rivera under surveillance on six separate occasions thereafter before the night of the arrest. On the first occasion, on February 4, 1963, Kreppein observed Rivera leave the Black Orchid Bar and drive off in a black and white 1962 Buick Wildcat bearing New Jersey plates. The car was registered in Rivera's name at his wife's address in Bridgeton, New Jersey. On another occasion both agents observed Rivera meet one Huff, another known narcotics violator.

During the course of their surveillance the agents observed that Rivera's activities were restricted to the hours of the late night and early morning and that he drove his Buick with great circumspection and in a way which indicated plainly concern about being tailed.

The agents ascertained that Rivera lived in an apartment house at 1554 Longfellow Avenue in the Bronx. They learned that he had an unlisted telephone number and that he did not respond to telephone calls. Rivera did answer his telephone, however, when Bailey used a code of telephone rings to which he had been advised Rivera responded.

About 8 p. m. on February 28, 1963, the night of the arrest, Bailey called Kreppein and asked Kreppein to join him. When Kreppein did so Bailey told him that he had received word from a reliable informant that Rivera was going to make delivery of narcotics that night. The agents went directly to Rivera's apartment house where they arrived about 9 p. m. They found that the lights in his apartment were on. After locating Rivera's Buick in the Sinclair garage nearby, they kept the entrance to the apartment house under surveillance until 3 a. m. the following morning. Rivera then emerged from the apartment house and walked to the garage. As he drove his Buick out of the garage he was arrested by the agents.

Agent Bailey asked Rivera where he had the cocaine and Rivera replied that he had cocaine in his short pocket and marijuana cigarettes in his coat pocket. The agents removed the cocaine and two marijuana cigarettes from Rivera's person. They then asked him whether he had more narcotics and Rivera answered that he had marijuana in his apartment. The agents told him that, in that event, they would have to get a search warrant in order to search the apartment. However, Rivera stated that this was not necessary and that he would take them to his apartment to get the marijuana. He did so and opened the door to the apartment with his own keys. Agent Kreppein found and seized a brown paper bag on a table in the living room with loose marijuana in it.

At the conclusion of Kreppein's testimony both sides rested. There was no denial of his account of what had occurred. Though Agent Bailey was also available to testify, neither side called him. Judge Tyler found that there was probable cause for the arrest and that Rivera had voluntarily admitted the agents to his apartment. He denied the motion to suppress in all respects.[1]

---

1. The hearing on the motion to suppress was conducted on the theory that the defense had the burden. Agent Kreppein was therefore called as a witness for the defense, examined in chief by defense counsel, and cross-examined by the Government. The defense appeared quite willing to follow this procedure and raised no objection to it. Nor has any such question been raised on appeal.

As will be pointed out later, on a motion to suppress on the ground of illegal arrest without a warrant the burden is on the Government to show that there was probable cause for the arrest. See discussion infra, p. 707. Obviously, however, the moving party must make a preliminary showing as to the circumstances of the arrest sufficient to raise a question as to its legality. But the question of how far, if at all, the moving defendant must go beyond showing that the arrest was without a warrant is not without its difficulties. Since the appellant here went

At the trial before Judge Tyler which immediately followed, appellant renewed his motions to suppress the seized narcotics. They were again denied and the cocaine and marijuana which had been seized were admitted in evidence over objection. Both sides rested on the conclusion of the Government's case and Judge Tyler found defendant guilty on both counts.

The sole question presented on this appeal is whether the arrest of Rivera without a warrant in the early morning of March 1, 1963 was a legal arrest. If it was not, the search of Rivera's person was not an incident of a lawful arrest, and was therefore illegal. Under such circumstances the narcotics taken from his person would have been inadmissible as evidence of his guilt. Moreover, the marijuana seized at his apartment immediately thereafter would also be the fruits of an illegal arrest and would likewise have been inadmissible. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

Under § 104(a) (2) of the Narcotics Control Act of 1956, 26 U.S.C. § 7607(2), agents of the Bureau of Narcotics are authorized to

"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * or marihuana * * where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

Thus, under the Act, whether or not an arrest by narcotic agents without a warrant is valid depends on whether the arresting agent had reasonable grounds for believing that the person arrested had committed or was committing a violation of the Narcotics Laws. This requirement is substantially the same as that imposed on law enforcement officers generally by the Fourth Amendment requirement of probable cause.[2] The constitutional and statutory requirements are virtually coextensive. Wong Sun v. United States, 371 U.S. 471, 478, n. 6, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Draper v. United States, 358 U.S. 307, 310, n. 3, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Smith, 308 F.2d 657, 661 (2 Cir., 1962); United States v. Walker, 246 F.2d 519, 526 (7 Cir., 1957).

While probable cause means more than mere suspicion, it is also plain that the arresting officer "need not have in hand evidence which would suffice to convict." Wong Sun v. United States, supra, 371 U.S. p. 479, 83 S.Ct. pp. 412–413, 9 L.Ed.2d 441. In the oft quoted language of Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), there is probable cause where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that" a crime had been or was being committed.

The test of probable cause is designed to strike a reasonable and proper balance between the protection of the rights of the individual citizen against "unreasonable interferences with privacy and from unfounded charges of crime," on the one hand, and the countervailing reasonable necessities of law enforcement for the protection of the community at large on the other. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). The test is plainly a practical compromise and the

---

fully into the circumstances of the arrest in his examination of Kreppein, raised no objection to the procedure followed either in the court below or here, and was not prejudiced by it, that question is not before us on this appeal.

2. Amendment IV—Searches and Seizures. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

probabilities with which it deals must be viewed in the light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, supra, 338 U.S. p. 175, 69 S.Ct. p. 1310, 93 L.Ed. 1879. "The quantum of information which constitutes probable cause * * * must be measured by the facts of the particular case." Wong Sun v. United States, supra, 371 U.S. p. 479, 83 S.Ct. pp. 412–413, 9 L.Ed.2d 441.

■ In order to obtain a warrant of arrest under Rules 3 and 4 of the Federal Rules of Criminal Procedure a federal agent must present to the Commissioner a sworn complaint setting forth "the essential facts constituting the offense charged" and it must appear "that there is probable cause to believe that an offense has been committed." The Government must make at least the same showing where an arrest without warrant is challenged. Wong Sun v. United States, supra, 371 U.S. pp. 479–480, 83 S.Ct. pp. 412–413, 9 L.Ed.2d 441; Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556 (1955). There must be a proper balance between the two. See Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697 (1950). Were it otherwise an officer might "act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant," and to allow him to do so would subvert the fundamental policy of the Fourth Amendment supplemented by the Rules of Criminal Procedure. Wong Sun v. United States, supra, 371 U.S. p. 482, 83 S.Ct. p. 414, 9 L.Ed.2d 441; Wrightson v. United States, supra.

■ For these reasons the Government has the burden of showing probable cause to believe that a crime had been or was being committed both in obtaining a warrant prior to arrest and in sustaining the legality of an arrest without a warrant. Wong Sun v. United States, supra; Wrightson v. United States, su-

pra; Cervantes v. United States, 263 F.2d 800 (9 Cir., 1959); Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751 (1958). But cf. Schnitzer v. United States, 77 F.2d 233 (8 Cir., 1935).

■ Moreover, an arrest unlawful in its inception, may not be validated by what later turns up in the way of proof that a crime has been or was being actually committed. The test is whether probable cause exists when the arrest is made, and unless it so exists the arrest is illegal and all fruits of the arrest by way of evidence seized as a result are inadmissible and must be suppressed. United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1927).

■ Appellant attacks the sufficiency of the showing of probable cause in the case at bar on several grounds. First, he contends that the court below erred in admitting the testimony of Agent Kreppein as to a number of statements made to him by his partner Bailey which are clearly hearsay. There is no merit to this contention, for it is well settled that evidence of what the arresting agent had learned and believed at the time of the arrest may be received and considered on the question of probable cause. Draper v. United States, supra; United States v. Heitner, 149 F.2d 105 (2 Cir., 1945), cert. den. sub nom. Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432 (1945).

Appellant also contends that there was no showing by the Government as to the reliability of the informant who told Agent Bailey that Rivera was about to make a delivery of narcotics on the night of February 28, 1963 and in any event that probable cause was not shown on the record as a whole.

■ It is plain that in order to establish probable cause it must be shown that the officers had reason to believe that information on which they were acting was reasonably reliable. For unless they had such belief they could not have been acting in the reasonable belief that a

crime was being or was about to be committed. The circumstances under which information obtained by an officer can be determined to be reasonably reliable are well stated in Rodgers v. United States, 267 F.2d 79, 85 (9 Cir., 1959), with extensive citation of authority:

"The courts have no trouble in finding reasonable cause where the arresting officer has personal knowledge leading him to believe that a crime has been committed, whether from his own observation and knowledge or where the search is incident to a customs inspection. However, where the arresting agents rely on an informer the question becomes more difficult. When the information from the informer is combined with the arresting officer's personal knowledge and observation of the defendant, or where the arresting officer, though without personal knowledge or observation, knows or has reasonable grounds to believe that an informer is reliable, the courts have found that there was reasonable grounds on which to make a valid arrest. However, where the officer makes an arrest without any knowledge of the commission of a crime except from an informer whom he does not know to be reliable, the courts have consistently held there is no reasonable grounds for the arrest."

The information which the Bureau of Narcotics had given Kreppein had been confirmed by him in several respects; it was reasonable for him to rely on it. A month before, the agents had received information from Washington as to narcotics activities of Mario and Miller. Rivera had been identified as Mario and had been connected with Miller at the Black Orchid Bar. It had been ascertained that he owned a new Buick as indicated in the Washington report, that he conducted his activities in the dead of night under suspicious circumstances and that he appeared apprehensive that he might be tailed. He used a special telephone code and during the course of the investigation he was observed to meet at least two known narcotic violators. Against this background the reliability of the information received on the night of the arrest was further corroborated by Rivera's own actions in the small hours of the morning.

Moreover, Kreppein testified that Bailey told him expressly that the information as to Rivera's plans had come from "a reliable informant." Though Bailey, who presumably had whatever knowledge there was concerning the informant's reliability, was fully available to testify, the appellant did not choose to call him and the statement as to the reliability of the informant was uncontradicted.

■ The circumstances shown by the record combine to present a picture from which the agents could have drawn the reasonable inference that a delivery of narcotics was about to take place on the night in question. This was all that was required of them under the circumstances. We hold that the totality of facts and circumstances in this record sufficiently established that there was probable cause for the arrest.

■ Since the arrest was made on probable cause it was valid, and the agents, as an incident thereto, were entitled to search Rivera and seize the cocaine and marijuana cigarettes which they found in his possession.

■ In the light of this holding, moreover, Rivera's contention that the search of his apartment was illegal must necessarily fall of its own weight. There was uncontradicted evidence that Rivera freely gave his consent to the search of his apartment without a warrant and opened the door of the apartment for the agents with his own keys. Under these circumstances it is plain that the search of the apartment was made with Rivera's consent and was lawful and proper. Smith v. United States, supra.

■ The motion to suppress the cocaine found in defendant' possession and the marijuana found in his apartment was properly denied and this evidence was properly admitted at the trial.

There was ample evidence before the trial judge to sustain the conviction on both counts.

The judgments of conviction are affirmed.