Gabrielli, J.
Defendant pleaded guilty to the crime of attempted criminal possession of a weapon as a misdemeanor (Penal Law, §§ 260.05, 110.00) and was convicted on his plea by the Criminal Court, Kings County, following a hearing upon his motion to suppress a blackjack seized from him, and the denial thereof. The denial of the motion and the judgment of conviction were affirmed by a divided Appellate Term. This case presents the recurrent, often perplexing problem of evaluating police investigative activity in light of the mandates of *74 the "stop and frisk” statute (CPL 140.50). We are called upon to determine whether the search, the second prong of the "stop and frisk” dichotomy, was justified following an originally proper stop of defendant and two others.
While on patrol in a "high crime, high narcotics” area one evening, Patrolman Robert Martin and his partner observed three men standing in the lobby of a building. When the officers proceeded to investigate, they noticed one of the men "holding a knife in his hand”, standing against the right wall of the 10-foot-wide lobby while the defendant and another man were leaning against the opposite wall. The police officers entered the building and one of them called out "Police officer, drop the knife.” The man holding the knife complied. Defendant then took several steps toward the door. Although there was no claim he was attempting to elude or evade the police, Officer Martin said "hold it” and at the same time extended his left hand, touching a "hard object” in defendant’s right jacket pocket. He immediately placed the defendant against the wall and thrust his hand into the defendant’s pockets, seizing a blackjack. Defendant was then placed under arrest.
On the record before us, there was no basis within the standards of the "stop and frisk” statute (CPL 140.50)[1] for the search of defendant’s person. After a valid stop, a police officer should demand an explanation of the suspect’s conduct (CPL 140.50, subd 1). A search is subsequently warranted only if the officer "reasonably suspects” that he is in danger of physical harm (CPL 140.50, subd 3). This case might appear difficult to resolve since the officers, having observed the knife, initially acted on a reasonable suspicion that a robbery was in progress. At the hearing on the motion to suppress, however, Officer Martin, the only witness for the People, did not testify that he believed he was in danger nor did he state that the *75 "hard object” which he felt upon accidently touching the defendant was or felt like a weapon. On the contrary, he did testify that the defendant was not doing anything suspicious before he took several steps toward the exit and, further, that defendant might have been the victim of the robbery which the officers suspected to be in progress. Under these circumstances, there was no "articulable foundation for the entrenchment upon individual liberty and privacy which a stop and frisk entails” (People v Johnson, 30 NY2d 929, 930). The search was not based upon any reasonable suspicion articulated by the police officer that he was in fear of physical danger as required by CPL 140.50 (subd 3) (see, also, Terry v Ohio, 392 US 1, 24).[2] The fact that he felt a "hard object”, which may have been a glasses case, comb or wallet, was an insufficient ground for such suspicion. No preliminary inquiry was made of the defendant as required by CPL 140.50 (subd 1) (see People v Rosemond, 26 NY2d 101; cf. People v Hunter, 30 NY2d 774, 776). The police possessed no information linking defendant to possession of a weapon (see People v Moore, 32 NY2d 67, 72; Adams v Williams, 407 US 143); and, furthermore, no exigent circumstances were present to justify the immediate intrusion into defendant’s pockets (People v Taggart, 20 NY2d 335, 342-343). In sum, the officer could point to no "particular facts” from which an inference could be drawn that defendant posed an imminent danger to him or his partner (People v Mack, 26 NY2d 311, 316-317; Sibron v New York, 392 US 40, 64).
Accordingly, the order of the Appellate Term should be reversed and the information dismissed.

. In pertinent part CPL 140.50 provides:
"1. ** * * a police officer may stop a person in a public place * * * when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct.
* * *
"3. When upon stopping a person under circumstances prescribed in subdivisions one and two a police officer * * * reasonably suspects that he is in danger of physical injury, he may search such person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons.” (Emphasis added.)

. The instant case is essentially the converse of the situation in People v Martinez (37 NY2d 662). In Martinez, the initial stop was unlawful but the intervening circumstances attenuated the taint attaching to the stop. Here, the stop was proper but the subsequent police activity has not been shown to come within the confines of the "stop and frisk” law. The result here should dispel any impression that Martinez is to be construed as authority for the proposition that ignorance or misconception of the law on the part of the police will excuse noncompliance with statutory or constitutional mandates. (See concurring opns in People v Martinez, supra.)