■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN DOE, Also Known as NICHOLAS ABATE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered May 16, 1975, convicting him of criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court, dated April 16, 1973, which, after a hearing, denied his motion to suppress physical evidence. Order and judgment reversed, on the law and the facts, motion to suppress granted, and indictment dismissed. At the hearing on the motion to suppress, two police officers testified that, at 10:15 P.M. on February 16, 1972, upon responding to a radio call to investigate a truck at a certain location in Queens, they found an unmarked trailer backed up against a vacant store. The store was set back about 20 feet from the sidewalk and part of the trailer extended into the street. The area, mixed commercial and residential, was dark and otherwise deserted. The officers, holding lighted flashlights, left their car in the street and walked past the trailer toward the store. Although they heard voices, they saw no light and could not see the opening to the store. At that time they had no knowledge that the trailer was stolen; no attempt was made to check the trailer's license plates. As they passed the trailer, they could see the entrance to the store; the door was off its hinges. Officer De Lorenzo was the first to see the defendant and one Raymond Boyd standing in the vicinity of the doorway, removing metal vats from the trailer. Without seeking permission, the two officers entered the store, which was lit by a

kerosene lamp. Officer Herndlhofer, with pistol in hand, then saw the defendant and Boyd as they were moving five-gallon metal vats from the entrance to the interior of the store. The store was empty except for these metal vats and an old refrigerator. There were about 400 similar vats in the trailer. When asked to explain their presence, the men said that they were moving an old refrigerator. In addition, they were unable to produce either the trailer registration or an invoice for its contents. Officer Herndlhofer testified that, at that point, the defendant was no longer free to leave the premises. Upon questioning the defendant separately, Officer Herndlhofer stated that the defendant then offered him a bribe, whereupon he was arrested for bribery. The trailer and its contents were seized. It was not until four hours later that the officers learned that the trailer and its contents were stolen. The hearing court found that the officers' investigatory powers justified their presence and denied the motion to suppress, in part, on the basis of the plain view exception. In addition, the hearing court held that the totality of the circumstances, including an offer of a bribe, went beyond mere suspicion that the items were the "fruits" of a crime. The events took place in an area protected by the Fourth Amendment to the United States Constitution (see *Lanza v New York,* 370 US 139, 143; *People v Spinelli,* 35 NY2d 77), but there was a complete absence of the exigent circumstances which have been held to be necessary to justify police intrusion without a warrant (cf. *People v Sanchez,* 38 NY2d 72; *Warden v Hayden,* 387 US 294; *People v Wojciechowski,* 31 AD2d 658). Even assuming *arguendo* that the events took place on public property, the moment that the defendant was seized the legality of the seizure depended upon whether the officers had reasonable suspicion (see *People v Cantor,* 36 NY2d 106, 112, 114). Except for the radio call to "investigate a truck", the absence of activity in the area and the time of day, there was no reason to suspect criminal activity. The sight of two men unloading metal vats from a detached trailer was equally consonant with innocence. The answers to the officers' inquiries were not sufficient, under the circumstances, to convert mere suspicion to reasoned or just suspicion. Therefore, while the arrest for bribery appears to have been proper, the subsequent seizure of the trailer and its contents must be suppressed as it was tainted by the prior unlawful intrusion and seizure of the defendant (see *People v Martinez,* 37 NY2d 662; *McDonald v United States,* 335 US 451). Hopkins, Acting P. J., Cohalan and Rabin, JJ., concur; Shapiro, J., dissents and votes to affirm the order and judgment, with the following memorandum, in which Titone, J., concurs: The principal question on this appeal, and the only one which merits discussion, is whether the Criminal Term properly denied suppression of physical evidence when a trailer and its contents were seized, although the police officers at the time did not know that the trailer and its contents had been stolen from the Coca Cola Company. In my opinion the Criminal Term was correct in refusing to suppress the evidence and I therefore dissent from the conclusion reached by the majority of this court and vote to affirm. The only witnesses who testified at the suppression hearing were two police officers. Their testimony discloses that, at about 10:15 p.m. on February 16, 1972, they responded to a radio call to investigate a truck at 36th Avenue and 11th Street, Queens. About a block away from that location they saw a 41-foot trailer backed against a vacant store with "paint, Bon Ami on the windows." There was an unattached tractor in the same block, but not at the side of the trailer. The store was set back about 20 feet from the sidewalk so that part of the trailer extended into the street. Although they heard voices inside the store, they saw no light. There was room to pass

between the trailer and the building. At the end of the trailer they saw the open doorway of the store (which was lit by a kerosene lamp). They then noticed that the makeshift door to the store had been removed from its hinges and they could see into the store. They saw the defendant and one Raymond Boyd in the building, moving five-gallon metal drums (like old milk cans) from the front to the rear of the store and taking drums out of the trailer. The officers then entered the store with flashlights on. They saw an old refrigerator and some metal drums in the store and about 400 more drums in the trailer. The defendant was about 10 feet in front of them and Boyd was close to the defendant. When they were asked "What are youse *[sic]* doing here?", they gave no response but, upon the officer's repetition of the question, the defendant said that he was moving an old refrigerator and Boyd said that he was helping the defendant. The police then asked them for a bill of lading and registration, which neither the defendant nor Boyd had. Some 25 minutes later, the officers drove to the station house with the defendant and Boyd in custody. The police officers also testified that this was a partial factory area, that no other place was open and that there were no other people, lights or tractors in the vicinity. The officers did not learn that the trailer and its contents had been stolen until several hours later. In fact, until the police made inquiry, the Coca Cola Company was unaware that the trailer had been stolen. My analysis of the foregoing facts leads me to believe that, for at least two reasons, the suppression motion was properly denied. Section 1202 of the Vehicle and Traffic Law provides, in relevant part: "(a) Except when necessary to avoid conflict with other traffic, or when in compliance with law or the directions of a police officer or official traffic-control device, no person shall: 1. Stop stand or park a vehicle: * * * b. On a sidewalk". Hence the police officers, who were responding to a radio call to investigate a truck at that general location, had sufficient reason to inquire whether those who were unloading the trailer were responsible for its being illegally parked. When that is coupled with the other circumstances they encountered, i.e. (1) the unloading was being carried on at 10:15 P.M. in an area which was dark and otherwise deserted; (2) the unloading was being done with only the light shed by a kerosene lamp in the store in which the unloaded vats were being deposited; (3) the door to the store had been removed from its hinges; (4) the store was empty except for an old refrigerator and the metal vats which were being unloaded; (5) the inability of the defendant and his companion to produce either a registration for the trailer or an invoice for its contents; and (6) the obviously false explanation that they were moving the old refrigerator whe... the police officers had witnessed them transferring vats from the trailer into the store, there was sufficient evidence for a trained police officer to reasonably believe that some sort of criminality was afoot. However, even if the facts then known by the officers were not sufficient to constitute probable cause to sustain the arrest and to validate the ensuing search and seizure, the denial of the motion to suppress is sustainable on the theory of inevitable discovery, which our Court of Appeals established as a valid limitation on the "fruit of the poisonous tree" doctrine (see *People v Fitzpatrick,* 32 NY2d 499, 506–507, cert den 414 US 1033) and which this court recently followed in *People v Steg* (51 AD2d 810), where we said: "Although the information which led to appellant's conviction for grand larceny was the product of the illegal seizure of his person, it is clear that the case falls within the purview of the doctrine of inevitable discovery. That is, evidence derived from information obtained in an unlawful seizure is not inadmissible under the 'fruit of the poisonous tree' doctrine when it is

shown that such evidence would inevitably have been gained without the unlawful action *(People v Fitzpatrick,* 32 NY2d 499, 506, cert den 414 US 1033)." In *People v Fitzpatrick (supra),* the court said (p 506): "the courts have held that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence." The facts in this case fall directly within the principle of *Fitzpatrick,* for, if the police had phoned the Coca Cola Company before arresting the defendant, the larceny of the trailer and its contents would inevitably have been discovered and the defendant could then have been arrested and the property seized. In view of the statement in the majority opinion that "the events took place in an area protected by the Fourth Amendment", it may not be amiss also to point out that, while the store was an area protected by the Fourth Amendment, the defendants, having no possessory interest in the store, or any right to be there, had no standing to raise that constitutional issue (cf. *People v Cefaro,* 21 NY2d 252, 257). I would, therefore, affirm the judgment and order.