■ In the Matter of DARRICK C., Appellant.—In a proceeding pursuant to article 7 of the Family Court Act, the appeal is from an order of the Family Court, Queens County, dated March 6, 1979, which, upon a finding that appellant had committed acts which, if committed by an adult, would have constituted the crime of criminal possession of stolen property in the

third degree, adjudicated appellant a juvenile delinquent and placed him on probation for a period of one year. Order reversed, on the law and the facts, without costs or disbursements, and petition dismissed. On January 9, 1979, in response to a radio run, two police officers proceeded to the area of 145th Avenue and 220th Street in Springfield Gardens, New York, to investigate a report of two "men tampering with autos." The officers observed appellant and another youth carrying a red tool box into Springfield Park. They followed the two youths into the park to a clearing near a small foot bridge where they observed the boys place the tool box on a side wall of the bridge. At this point, one of the officers ran toward the youths with his gun in one hand and his shield in the other and shouted, "Stop! Police." Both youths attempted to flee but were promptly apprehended. A subsequent canvassing of the residents in the neighborhood revealed that the red tool box had been recently stolen from a parked car. In evaluating the propriety of the police action, it must first be determined whether it was justified in its inception and whether it was reasonably related in scope to the circumstances which rendered its initiation permissible (see *People v Cantor,* 36 NY2d 106, 111). Here, the vague information conveyed to the officers by the radio run could generate, at most, only a belief that criminal activity was afoot (cf. *People v Stewart,* 41 NY2d 65, 69). Thus, the permissible scope of intrusion was limited to the "extent necessary to gain explanatory information, but short of a forcible seizure" (see *People v De Bour,* 40 NY2d 210, 223). Police-citizen encounters wherein the police approach with their guns drawn are intrusions of the most intensive sort. Upon this record, it is apparent that when the arresting officer approached the two boys with his gun drawn and shouted, "Stop! Police", he subjected them to a forcible seizure (cf. *People v Figueroa,* 58 AD2d 655). It is equally apparent that the circumstances failed to justify such aggressive police conduct. At the fact-finding hearing the arresting officer testified that he did not observe any weapons on the youths, nor did he observe anything that could be interpreted as a dangerous gesture by either youth. Thus, the gun-drawn approach could not be justified as a reasonable self-protective measure (e.g., *People v Simms,* 57 AD2d 579). Having concluded that the initial seizure of the appellant was unlawful, the fruits of that unconstitutional seizure must be suppressed. The tangible evidence in this case was revealed as a direct consequence of the illegal nature of the stop. Consequently, the order should be reversed and the petition dismissed. We reach no other issue. Hopkins, J. P., O'Connor, Lazer and Margett, JJ., concur.