■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JACK BEHLIN, Respondent. — Appeal by the People, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Owens, J.), entered February 20, 1980, as granted that part of defendant's motion which was to suppress certain physical evidence. Order reversed insofar as appealed from, on the law and the facts, motion denied as to the physical evidence and case remanded to Criminal Term for further proceedings consistent herewith. Indicted for criminal possession of a weapon (i.e., a pistol) in the third degree (Penal Law, § 265.02), defendant moved to suppress the pistol as illegally obtained by the police. At the hearing of this motion, the People produced William Martin, the police officer who had seized defendant's pistol. Martin testified that while with his partner on radio motor patrol in the early morning hours of September 27, 1978 he had observed a vehicle traveling in the wrong direction on a one-way street. He stated that he and his partner had stopped the vehicle and approached it on foot, and that while his partner spoke with the driver, who had gotten out of the vehicle, he (Martin) had observed a bulge in the driver's right-hand pocket. Martin further testified that the driver had been wearing tight pants, and that the bulge had appeared to reveal the imprint of a gun, which he then seized, after frisking the driver. Finally, Martin identified the defendant as the driver of the vehicle and the person from whom he had taken the gun. Defendant, the only other witness to testify at the hearing, denied almost entirely the police officer's account. He stated that, after he had been stopped for what the police charged was a traffic violation, he had been held at gunpoint by one officer while the other searched his vehicle and discovered the gun in question under the driver's side of the front seat. Criminal Term rendered an oral decision after the hearing. In reviewing the testimony it observed that defendant's account was as credible as that of the police officer. Nevertheless, it stated that, even if the officer's testimony were credited as true, it failed to prove the existence of probable cause to search the defendant. We reverse. Initially, it is our determination that Police Officer Martin took

the gun in question from defendant's pocket, after having observed a bulge that revealed the imprint of a gun and after having frisked the defendant. We also find that the search and seizure took place while defendant was stopped for a traffic violation, which the police had observed, and that this entire incident occurred in the early morning hours of September 27, 1978. On the issue of the search and seizure, we note that CPL 140.50 (subd 3) predicates a search for weapons on a police officer's reasonable suspicion that the individual to be searched is presently dangerous. *(People v Moore,* 32 NY2d 67, 70; see *Sibron v New York,* 392 US 40, 64.) Thus, on the particular facts of this case, we must decide whether Police Officer Martin could have reasonably suspected that he and his partner were in danger of physical injury and whether defendant posed a threat to their safety. (See *People v Chestnut,* 51 NY2d 14, 21-22; see, also, *Pennsylvania v Mimms,* 434 US 106; *Terry v Ohio,* 392 US 1; *People v Prochilo,* 41 NY2d 759; *People v Green,* 35 NY2d 193.) Given the lawfulness (cf *Delaware v Prouse,* 440 US 648), time and circumstances of the initial stop, and Officer Martin's observation of the imprint, configuration or outline of a gun, it was reasonable for him to suspect that the defendant posed a threat to his own safety and that of his partner. (See *People v Prochilo, supra,* p 761.) The search was, therefore, warranted, and the seizure of the gun valid. Mangano, Cohalan and Weinstein, JJ., concur.

Margett, J., dissents and votes to remand the matter to Criminal Term for further proceedings and hold the appeal in abeyance in the interim, with the following memorandum with which Lazer, J. P., concurs: In my view, the matter must be remanded to the suppression court in order for it to "set forth on the record its findings of fact" as was required by CPL 710.60 (subd 6). That court should then make any supplemental conclusions of law that might be required in light of the restatement of its findings of fact. In the absence of an adequate statement of findings of fact by the suppression court, which alone had the opportunity to hear and observe the witnesses, this court cannot properly determine this appeal. It is well settled that, as a general matter, findings of fact made by a trial court based upon its resolution of conflicting testimony will not be set aside on appeal, because of the advantages possessed by the trial court in seeing and hearing the witnesses at firsthand *(Amend v Hurley,* 293 NY 587, revg 267 App Div 612; *Barnet v Cannizzaro,* 3 AD2d 745; see, generally, 10 Carmody-Wait 2d, NY Prac, § 70:385). Thus, in affirming a judgment entered after a nonjury trial in *Barnet v Cannizzaro (supra,* p 747) we said: "The credibility of the witnesses, the reconciliation of conflicting statements, a determination of which should be accepted and which rejected, the truthfulness and accuracy of the testimony, whether contradictory or not, were issues for the trier of the facts * * * The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record". In affirming a judgment dismissing the complaint entered after a nonjury trial in *Rametta v Kazlo* (68 AD2d 579, 581), we said "This court should not disturb the finding of the trier of fact based on a weighing of credibility, absent a clear indication that the defendant's testimony was incredible as a matter of law." The principle expressed in these and other cases also applies with respect to findings based upon the resolution of conflicting testimony when made by a trial court after a hearing on a motion to suppress evidence as unconstitutionally obtained *(People v Yukl,* 25 NY2d 585, 592, cert den 400 US 851; see *People v Leonti,* 18 NY2d 384, 390; *People v Prochilo,* 41 NY2d 759, 761; *People v Newson,* 68 AD2d 377, 386-387). From this principle, the related principle may be derived that an appellate court should not take it upon itself to assess the relative credibility of witnesses in

the first instance where the suppression court has failed to do so. My disagreement with the majority stems from my belief that it has not paid sufficient heed to these principles in reversing the order of the suppression court. As indicated by the majority's description of the relevant testimony, the testimony of defendant flatly contradicted that of Officer Martin. I would add to that description that defendant testified that while seated in his car he handed his license and registration to one of the officers. The officer apparently returned to his car with these items. Thereafter defendant, who had not seen any sign indicating that he was driving on a one-way street and had seen "car [sic] parked there in either direction", went to the driver's side of the officers' car to ask why he had been stopped. Both officers were seated in the car and one appeared to be writing a summons. After one of the officers told him that he had driven the wrong way on a one-way street, and defendant had given his explanation, defendant started back to his car, which was stopped about half a car length from the officers' car. There is no indication in defendant's testimony that his conversation with the officers had been anything but civil or that he had been instructed by the officers at the conclusion thereof to remain at their car. After defendant started back to his car, the officer who had been seated on the passenger side of the officers' car left that car with his gun drawn and told defendant to "[h]old it". Defendant complied. The officer then conducted a search of defendant's person, found a "clip" in one of his pockets, and said "where there is smoke, there is fire". The search of defendant's car, which produced the gun in question, then ensued. Of course, Officer Martin did not articulate any reason for such a search of defendant's person or a search of the car since the necessary implication of his testimony was that neither search had occurred. I agree with the majority that if the facts are properly found to be consistent with Officer Martin's testimony,[1] then the gun was lawfully seized. On the other hand, if the facts are properly found to be consistent with the defendant's testimony, then the gun was seized in violation of defendant's constitutional rights since the fact that defendant had been stopped for a traffic violation and was walking toward his car did not authorize a search of his person at gunpoint in the absence of any articulation by the officers of a valid reason for such a search. (See *People v Marsh,* 20 NY2d 98; see, also, *People v Howell,* 49 NY2d 778; *People v Adams,* 32 NY2d 451.) Even assuming that the discovery of the clip, which ensued from this search, gave the police probable cause or other valid reason to conduct a warrantless search of defendant's car, which is questionable, the gun would still have to be suppressed as the "fruit" of the prior illegal search of defendant's person. (See Le Fave, Search and Seizure, § 11.4, subd [f].) However, as indicated below, the suppression court determined defendant's motion without resolving the fundamental issue of credibility presented by the flatly contradictory testimony of the witnesses. Its full "findings" of fact and conclusions of law with respect to the seizure of the gun were as follows: *"Well, the defendant's story had a ring of credibility.* He could have lied, and claim [sic] the gun wasn't used — about the whole thing — he admitted everything. *The defendant sounded as credible as the police officer. Aside from credibility and such, I find* — *the findings of facts* — on or about the 28th day of September 1978 at 2:20 a.m., according to the officer — ex-police officer William J. Martin, the defendant and another passenger were proceeding on the wrong way — wrong direction on Hendricks Street, that he stopped him, and that while his partner was talking to him and the — while his partner was standing between him and the defendant, Officer Martin was five feet eleven inches tall, that he was able to see an imprint in

---

1. Although he was present at court, Officer Martin's fellow officer was never called to testify, either on the People's case or in rebuttal.

the defendant's pocket which looked to be to him like a gun, that he searched the defendant. He found the gun and clip in his pocket \*\*\* The defendant testified that he picked up a hitchiker[2] *[sic]*. He was going to a service station because his car had become disabled, that he was stopped, and he was told to show his registration, and he asked him, take it out of his back pocket, and that he did so, that he gave the registration to the two officers back in the patrol car. He got out, approached him, asked him why he was being arrested, and as he was returning to his car, the officer pulled out the gun, and reached in his right-hand pocket, and — which had a clip; that he said where there is smoke, there is fire; searched. After a search, he found a gun on the driver's side of the car. *Even taking the officer's testimony without being contradicted about the defendant,* the question before the Court is whether or not there was probable cause. The right-hand pocket of the defendant was such, any number of objects could have been in there, any number of objects. The Court finds that this case will fall under People v. Watson, 40 Ad, 2d *[sic];* under People v. Sanchez, 38 NY 2d, 72; and also People v. DeBour, 40 NY 2d, 210. The Court feels, that under the circumstances, there was no probable cause for the defendant to be searched, *and based on the officer's testimony* — so the motion to suppress the gun is granted." (Emphasis added.) Thus, although it is not completely clear from the suppression court's statement of its "findings", it appears that that court found that even if the rest of his testimony were true, Officer Martin did not see the "imprint" of a gun through defendant's pants pocket either because his view of defendant's pocket was blocked by his fellow officer, or, perhaps, defendant's car, or because the nature of the gun, pants and pocket was such that the gun would not have made an observable impression against the pocket had it been in it, or because of a combination of both. Thus, the suppression court made no finding with respect to whether the gun was seized from defendant's pocket, as Officer Martin testified, or whether it was seized from under the seat of defendant's car, after an unjustified search of defendant's person, as defendant testified, since it concluded that even a seizure from defendant's pocket was violative of his constitutional rights. In reversing the order insofar as appealed from, this court has necessarily found both that the gun was seized from defendant's pocket and that, before the seizure, the outline of the gun against defendant's pocket was seen by Officer Martin. As a general matter, the first finding was not for this appellate court to make since it involves nothing more than the assessment of the relative credibility of defendant and Officer Martin, witnesses whom this court has not seen or heard. The inappropriateness of this procedure is particularly apparent in this case where the suppression court stated that "the defendant's story had a ring of credibility \*\*\* [t]he defendant sounded as credible as the police officer". The second finding does not directly involve an assessment of the credibility of contradictory testimony. However, it does involve weighing Officer Martin's testimony that from his vantage point he could see the outline of a gun in defendant's pocket against the evidence in the record with respect to both the nature of the gun and defendant's pants and pocket and the relative locations of defendant, his car, Officer Martin, and Officer Martin's fellow officer. As discussed more fully below, if the suppression court had found that

2. Officer Martin and defendant agreed that a person whom defendant described as a hitchhiker was seated in defendant's car during the events in question and that he was taken to the police station after defendant's arrest. This person did not testify at the hearing. Although Officer Martin did not testify on the point, defendant testified that the police released the person after defendant told them that he was merely a passenger in the car. Defendant also testified that his efforts to locate his passenger to secure his attendance at the hearing were fruitless. Upon the People's objection, Officer Martin was not permitted to testify whether he had obtained the passenger's pedigree.

the remainder of Officer Martin's testimony was reliable but that his testimony that he saw the outline of a gun in defendant's pocket was not, this court might well decline to affirm such a finding depending upon the evidentiary basis for it. However, in finding at this juncture, in the absence of a statement of important findings of fact by the suppression court, that Officer Martin's testimony in this regard is worthy of belief, it is my view that this court has exceeded the proper function of an appellate court. Moreover, assuming that this court having made the finding that the testimony of Officer Martin is worthy of belief and that the testimony of defendant is not, without having heard and observed the testimony, comports with State law, it appears to me that there is at least a serious question whether the making of such a finding in such a manner comports with the due process clause of the Fourteenth Amendment to the Federal Constitution. In *United States v Raddatz* (447 US 667) the United States Supreme Court, by a closely divided court, upheld the constitutionality of a Federal statute which permits a Federal district court to refer to a Magistrate a motion to suppress evidence and determine the motion based on the record developed before the Magistrate, including the Magistrate's proposed findings of fact and "recommendations" *(United States v Raddatz, supra,* p 673). In that case the Magistrate, after a hearing, expressly resolved a question of credibility of witnesses against the defendant and recommended that the motion to suppress be denied. The district court adopted that recommendation after it had reviewed, among other things, the transcript of the hearing, and the parties' proposed findings of facts and conclusions of law. Defendant was thereafter convicted. Upon his appeal, the Circuit Court of Appeals held that defendant had been deprived of due process because the district court had not personally heard the controverted testimony. Accordingly, it directed that a new hearing be held. The Supreme Court reversed the Court of Appeals, holding that the procedural provisions of the statute adequately protected the defendant. More specifically, Chief Justice Burger's opinion for the court stated as follows (pp 680-681): "While the district court judge alone acts as the ultimate decisionmaker, the statute grants the judge the broad discretion to accept, reject, or modify the magistrate's proposed findings. That broad discretion includes hearing the witnesses live to resolve conflicting credibility claims. Finally, we conclude that the statutory scheme includes sufficient procedures to alert the district court whether to exercise its discretion to conduct a hearing and view the witnesses itself." However, it is a footnote to this passage that is most relevant to the instant appeal. There, the Chief Justice stated as follows (p 681, n 7): "Neither the statute nor its legislative history reveals any specific consideration of the situation where a district judge after reviewing the record in the process of making a *de novo* 'determination' has doubts concerning the credibility findings of the magistrate. *The issue is not before us, but we assume it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach."* (Emphasis supplied.) This view was echoed in the concurring opinion of Mr. Justice Blackmun, who stated that he (p 684): "would distinguish between instances where the district court rejects the credibility-based determination of a magistrate and instances, such as this one, where the court adopts a magistrate's proposed result." Although the majority in this case has not rejected a finding by the suppression court that defendant's testimony was more credible than that of Officer Martin, since no such finding was expressly made, it appears that it has made its own finding, in the first instance, that Officer Martin's testimony was the more credible. Since it had no opportunity to hear and observe the witnesses,

the making of such a finding appears to me to at least raise a serious Federal constitutional issue in light of the rationale of *Raddatz*. However, such an issue need not be resolved in this case since, in my view, the reversal of the suppression court's order at this juncture is inconsistent with the law of New York. Accordingly, I am unable to presently join in the reversal of the order of the suppression court. On the other hand, important omissions in the suppression court's statement of its findings of fact also prevent me from voting for an affirmance. Assuming a proper evidentiary basis, the suppression court correctly determined that a search of defendant's person not preceded by a viewing of the outline of a gun in his pants pocket was unlawful since there is nothing in the record to suggest that Officer Martin had other reason to suspect that he was in danger of physical injury or that defendant had a gun (see *People v Prochilo,* 41 NY2d 759, *supra; People v Sanchez,* 38 NY2d 72, 75; *People v Marsh,* 20 NY2d 98, *supra).* However, the evidentiary basis for the suppression court's factual conclusion that Officer Martin did not see what he claimed to see is far from clear. Officer Martin testified that, notwithstanding that he was standing behind defendant's car and his partner was standing between him and defendant, he could see defendant's entire body and the "imprint" of a gun in the pocket of defendant's tight pants. Moreover, defendant did not testify that he was not wearing tight pants on the occasion in question and the pants were not offered in evidence. Of course, defendant gave no testimony to the effect that the relative positions of himself, his car, Officer Martin and Officer Martin's fellow officer were such that Officer Martin could not have seen the outline of a gun in his pocket since, under defendant's version of the facts, there was no gun in his pocket and the officers were both in their car when one of them decided to search defendant. Under these particular circumstances, the suppression court's omission of the intermediate findings of fact upon the basis of which it has reached its ultimate finding that Officer Martin did not see the impression of a gun prevents me from voting to affirm its order insofar as appealed from, since this court must know the factual basis upon which the suppression court rejected Officer Martin's testimony before it can properly decide to affirm or disaffirm its findings (see *People v Lombardi,* 18 AD2d 177, affd 13 NY2d 1014). Of course, it may well be that the suppression court found the testimony of defendant, that the gun was seized from his car, to be more credible than the contrary testimony of Officer Martin, but determined it unnecessary to make an express statement to that effect in light of the alternative basis upon which it determined defendant's motion. In such a case, its suppression order should not be disturbed. Alternatively, the suppression court may have found that Officer Martin's testimony that the gun was seized from defendant's pocket was credible but that his testimony that he saw the outline of the gun was not, either because of the manner of Officer Martin's testimony in that specific respect or because of what the court perceived to be the physical improbability of events having occurred as they were related by Officer Martin, or perhaps a combination of both. In that case, this court would have to be apprised of the specific basis for the suppression court's finding in order to determine the appeal. However, rather than speculate concerning the factual basis for the suppression order, it seems to me to be more prudent to remand the matter to the suppression court for a further articulation of its findings of fact (see *People v Lombardi, supra).* In other words, this does not appear to be one of those cases where the record is sufficient to permit this court to review the determination of a suppression court even though the suppression court has not made sufficient findings of fact (cf., e.g., *People v Russo,* 45 AD2d 1040). In conclusion, I note that the People's appeal, as limited by their brief, challenges only so much of the order of the suppression court as suppressed physical evidence. Thus, so much of that

order as suppressed postarrest statements made by defendant, based on the suppression court's conclusion that Officer Martin violated his constitutional rights by not providing him with adequate *Miranda* warnings, remains undisturbed.