■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO BAEZ GONZALES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Ryan, J.), rendered April 25, 1979, convicting him of criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. Judgment affirmed. On August 16, 1977 police officers Spano and Wright were on patrol in an area which, according to police briefings, was a narcotics prone area. At approximately 4:45 P.M. Spano, turning down a street in his squad car, observed three men engaged in a conversation. When the patrol car was about 20 feet from the men, Spano saw defendant rip open a brown manila envelope and offer it to one of his companions. The companion, seeing the police car, threw his hands in the air and refused to accept the manila envelope. The defendant thereafter turned in the direction of the patrol car and threw the envelope to the ground. Spano stopped the car about seven or eight feet from the three men and both officers exited the car. Spano walked over to retrieve the manila envelope. Officer Wright simultaneously walked over to the three men. They were told to put

their hands on a nearby parked car. Wright testified "I told the defendant, 'Don't move. Keep your hands where I can see them. Get up against the car.' I placed him against the car at the location. At this time, he started moving his hands down * * * At this time, he started to reach for his left pocket. I reached underneath him. I grabbed him by the belt. I pulled him by the belt. I pulled him into a modified frisk position so he could not move." A subsequent search of the defendant revealed a key case containing tin foil aluminum packets. Following a suppression hearing, the court denied defendant's motion to suppress these packets as well as similar packets found in the manila envelope retrieved by Officer Spano, upon a finding that the "totality of all these circumstances" gave the police officers probable cause to believe criminal activity was afoot. Defendant was subsequently convicted of criminal possession of a controlled substance in the third degree. For the reasons set forth below, we affirm. It is axiomatic that a finding of probable cause is not a necessary prerequisite for all police intrusions on an individual's liberty (*United States v Mendenhall,* 446 US 544; *People v Chestnut,* 51 NY2d 14; *People v Finlayson,* 76 AD2d 670). A police officer may briefly detain and make inquiries of an individual whom he reasonably suspects to be involved in criminal activity (*Terry v Ohio,* 392 US 1, 20). These brief detentions, at times escalating to a "seizure" of the individual, are lawful as long as the nature of the detention reasonably relates to the level of information available to the police officer (*People v Howard,* 50 NY2d 583, 589, cert den 449 US 1023; *People v Sanchez,* 38 NY2d 72; *People v Finlayson, supra*). Initially we note, that when Officer Wright approached the defendant, commanding him to freeze and put his hands atop a nearby parked car, the defendant was seized within the meaning of the Fourth Amendment. " 'Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment'." (*People v Chestnut,* 51 NY2d 14, 21, n 5, *supra; People v Boodle,* 47 NY2d 398, 401; *People v Cantor,* 36 NY2d 106, 111.) The lawfulness of this seizure must be examined in light of the quantum of knowledge known to the officers when they exited from their car. (*People v Finlayson, supra.*) Prior to seizure of the defendant, during roll call briefings at the precinct house, the officers were told that the scene of the crime was a narcotics prone area. "[T]he character of a neighborhood as a known locale for illicit narcotic activity provides an additional objective empirical basis for an officer to evaluate whether probable cause exists to believe that a transaction involves illegality." (*People v McRay,* 51 NY2d 594, 605, n 5.) In addition to the officers' knowledge of the area, the police observation of the suspicious activity on the part of the defendant's companion, in rejecting the envelope, and on the part of the defendant in throwing the envelope to the ground, thereby evincing a consciousness of guilt upon seeing the uniformed officers, increased the level of information. (*People v McRay, supra,* p 604; *People v Alexander,* 37 NY2d 202, 204.) Considering these facts together, the police officers had a sufficient basis to reasonably suspect criminal activity might be at hand and therefore were justified in approaching the defendant. (*People v McRay, supra,* p 605; *People v Howard, supra,* p 589.) Although there was a basis for questioning the defendant, there were no other police observations permitting any greater level of intrusion (*People v Sanchez, supra*). No initial inquiry was made of the defendant. Assuming Officer Wright would have had the right to frisk the defendant when the defendant began motioning toward his rear pocket, he testified, however, that it was not until after he had the defendant up against the car that the defendant started grabbing for his pocket. Additionally, the manila envelope was opened by

Spano while Wright was engaged with the defendant. In our view the scope and intensity of the police conduct here did not reasonably relate to the circumstances surrounding the encounter. *People v McRay (supra)*, relied on by the People, is distinguishable by the level of information available to the police. In that case, and the companion cases decided therein, the arresting officers, experienced in narcotics related arrests, observed the passing of *glassine* envelopes (a tell-tale sign of heroin) in areas rampant with narcotics activity. In the case at bar there was no testimony at the suppression hearing indicating that the officers were particularly familiar with drug-related crimes to the extent noted in *People v McRay*. Additionally, here, the police observed, not the passing of a glassine envelope, but the throwing of a brown manila envelope. Although we find that the police had an insufficient level of information to justify the seizure of the defendant, the evidence obtained pursuant to that unlawful seizure need not be suppressed. The manila envelope, thrown on the ground by defendant, is admissible on the ground of abandonment (*People v Boodle,* 47 NY2d 398, *supra; People v Brown,* 40 AD2d 527). Once the contraband was discovered, Officer Spano had probable cause to arrest the defendant. Once arrested, defendant would have been searched pursuant to normal police procedures. Accordingly, the contraband in the defendant's key case would have been inevitably discovered pursuant to a lawful arrest, regardless of the illegal seizure by Officer Wright (*People v Boodle, supra; People v Payton,* 45 NY2d 300, revd 445 US 573, on remand 51 NY2d 169). Defendant contends that his guilt was not proven beyond a reasonable doubt. We find this argument to be without merit. Turning to defendant's other contentions, he has failed to preserve them for appellate review (CPL 470.05, subd 2). However, were we to consider these contentions in the interest of justice, we would find that they too were lacking in merit. The charge concerning defendant's intent adequately informed the jury of the law (*People v Green,* 69 AD2d 842, affd 50 NY2d 891). Additionally, Criminal Term did not err in failing to charge the jury on circumstantial evidence (*People v Walstatter,* 73 AD2d 175, affd 53 NY2d 871). Lastly, defendant was not deprived of his right to a speedy trial. Titone, J. P., Mangano, Gibbons and Thompson, JJ., concur.