■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD L. SCRUGGS, Appellant. — Appeal by defendant from a judgment of the County Court, Suffolk County (Friedlander, J.), rendered May 21, 1981, convicting him of burglary in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress statements. Judgment affirmed. On April 16, 1980, Officer William Sutton was on patrol in a "sector" car when he received a radio call informing him that a residential alarm had gone off at 40 Bellhaven Road. Although he had recently passed the site without observing anything amiss, he immediately proceeded back to the subject location. His sergeant also responded to the call, in a separate car. En route Sutton observed two black males walking along the street some two tenths of a mile away from 40 Bellhaven Road. The officer recognized the shorter man, later identified as defendant, as a local resident. He regarded their behavior as suspicious since they avoided looking at him as he rode by. Furthermore, since they were in close proximity to the scene, he thought they might have seen someone or heard the alarm. Consequently, he radioed his sergeant, described the two "subjects" and asked the sergeant to stop them for questioning. Upon arriving at the scene, the officer noted that the house had been broken into and that certain of the back doors had been removed. He went back to the radio car to issue a "local notification". The sergeant had not seen the two men, but shortly thereafter, Officer Sutton received a communication from two brother officers informing him that they had stopped the subjects for questioning. In response to their queries, defendant proffered a false name which did not coincide with the police warrant control sheet, on which his true name appeared. After being apprised of his rights, he was arrested on the outstanding warrant and was transported to the Fifth Precinct, where he gave a number of incriminating statements to the police. The seizure of defendant's person based upon the evidence then available to the police was not illegal. A finding of probable cause is not a *sine qua non* of all police intrusion on an individual's liberty (*People v Gonzales,* 86 AD2d 634, mot for lv to app den 56 NY2d 596). Whenever an individual has been physically or constructively detained by virtue of a significant interruption of his liberty of movement emanating from particular police activity, such individual has been seized within the meaning of the Fourth Amendment (*People v Gonzales, supra; People v Chestnut,* 51 NY2d 14, cert den 449 US 1018; *People v Boodle,* 47 NY2d 398, cert den 444 US 969; *People v Cantor,* 36 NY2d 106). In evaluating a police seizure, it is the function of the courts to consider whether such action was justified in its inception and whether the police response was reasonably related in scope to the circumstances which predicated it (*People v Cantor, supra; Matter of Darrick C.,* 72 AD2d 768). The degree of permissible police interference is directly proportionate to the degree of objectively credible information possessed by them. "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality (*People v De Bour, supra*). The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure (*People v Cantor,* 36 NY2d, at p 114, *supra; People v Rosemond,* 26 NY2d 101;

*People v Rivera,* 14 NY2d 441, 446, and authorities cited therein). Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio,* 392 US 1; *People v Cantor, supra*). A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3). Finally a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence (CPL 140.10)" (*People v De Bour,* 40 NY2d 210, 223). In the instant case, Officer Sutton's suspicion of defendant and his companion was based upon the facts that they were the only two pedestrians he saw who were in close proximity to the area in which the alarm had sounded and that they avoided his look. He·also believed that they might possibly have seen someone or heard the alarm themselves and could have provided him with information. This was clearly a sufficient basis to justify the minimal intrusion of approaching individuals on a public street to request information. Upon receiving Sutton's radio communication, Officers Smith and Marchlowska matched the broadcast description with defendant and his companion. The ensuing police intrusion was extremely minimal. Without touching the men or displaying their guns, the officers merely requested identification. Only after the pedestrians displayed evasiveness did the officers check their warrant control sheet and ascertain that there was an outstanding warrant for defendant's arrest. Their response was not predicated merely upon a vague suspicion. Nor was it intended as a means of harassment. Rather, the instant police encounter was lawful in its inception and reasonably limited in scope and intensity. Accordingly, the stop of defendant was justified and his oral and written statements made subsequent thereto were properly held admissible. We have considered defendant's other contentions and find them to be without merit. Titone, J. P., Weinstein, Gulotta and Niehoff, JJ., concur.