■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FREDDIE BALLEJO, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County (Pitaro, J.), dated March 18, 1985, which, after a hearing, granted that branch of defendant's omnibus motion which sought suppression of physical evidence.

Order affirmed.

Defendant Freddie Ballejo and a woman companion were

sitting on a stoop in an area of Queens particularly noted for narcotic trafficking, when they were seen by Police Officer Phyllis Johnson, who was at the time in uniform and riding with her partner in a marked patrol car. Johnson observed the woman look in her direction and push a dark object which had been in her hand under nearby bushes. The officer did not see anything in defendant's hands. Johnson's partner stopped the vehicle in front of the stoop, and the officers left their car.

As the officers approached, defendant and the woman stood up and started to walk away, the woman holding onto defendant's arm. Johnson called out for them to stop, which they did.

While her partner detained defendant and his companion, Johnson proceeded to look under the bushes, from which she retrieved a black vinyl pouch. This was the same item which Johnson had seen the woman push under the bushes. Johnson opened the pouch and found 13 small white envelopes containing white powder, which, from prior experience, she determined was probably cocaine.

Johnson told her partner to search defendant. She saw him feel defendant's pants, heard him state that he felt a bulge, and then observed him put his hand inside defendant's pants and remove a soft black leather pouch. Johnson examined the pouch as it was handed to her and found more of the same type of white envelopes as had been found in the vinyl pouch.

Johnson placed both people under arrest, after which they were handcuffed and driven to the precinct, where the pouches and their contents were vouchered. After the prisoners were removed from their car, Johnson and her partner conducted a routine search of the vehicle. Johnson found two more white paper envelopes on the rear seat behind the area where defendant had been sitting. These items, apparently containing white powder which Johnson believed to be cocaine, were also vouchered.

Prior to taking the patrol car out on the road at the beginning of their tour, the officers had searched it, including a removal of the rear seat, and found nothing. The arrest of defendant and the woman was the first made by the officers during their tour that day; no one else had been in the car. Johnson did not see either prisoner placing the envelopes on the rear seat nor did her partner tell her of making such an observation.

The woman, Elizabeth Umpierre, later pleaded guilty to criminal possession of a controlled substance in the seventh

degree. Defendant, who was not charged with acting in concert with Umpierre, moved, *inter alia,* to suppress the cocaine found on his person. The hearing court suppressed the evidence as well as the envelopes of alleged cocaine found in the patrol car.

We affirm.

Defendant was not observed to be engaging in any criminal activity. There was no testimony that he knew of the contents of Umpierre's pouch or saw that she had attempted to hide it as the officer's approached in their patrol car. Indeed, there is no evidence that defendant was even aware that Umpierre had such a pouch in her possession. While the character of a neighborhood as a narcotics-prone area is certainly relevant in reviewing a police officer's evaluation of whether he has a reasonable suspicion that drug activity is occurring *(People v McRay,* 51 NY2d 594, 605, n 5), the fact that a person is in such a neighborhood is not a basis for concluding that he is engaged in criminal, or narcotics-related, activity *(Brown v Texas,* 443 US 47, 52).

Here, Officer Johnson apparently determined that defendant was a suspect because of his proximity to Umpierre, who had been seen hiding the cocaine-filled pouch, and because defendant walked away with her. However, no such inference of guilt by association is permissible. "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" *(Ybarra v Illinois,* 444 US 85, 91; *see also, People v Martin,* 32 NY2d 123; *People v Batista,* 68 AD2d 515, *affd* 51 NY2d 996).

Assuming, arguendo, that the police detention of defendant was justified, the "frisk" of defendant (which Johnson termed a "search") cannot be so justified. After a valid stop, a police officer should demand an explanation of the suspect's conduct *(People v Sanchez,* 38 NY2d 72, 74). No such preliminary inquiry was made at bar. Further, there was no testimony as to observations made by the officers permitting any greater level of intrusion *(People v Gonzales,* 86 AD2d 634, *lv denied* 56 NY2d 596).

Although it is true that persons involved in the drug trade are often violent and might be thought to carry weapons *(People v Broadie,* 37 NY2d 100, 112, *cert denied* 423 US 950), the officers had no basis for concluding that defendant was involved in the drug trade, although that assumption could clearly be applied to Umpierre. That the two walked arm-in-arm did not supply the missing evidence.

A frisk is warranted only if the officer reasonably suspects that he is in danger of physical harm *(People v Sanchez, supra)*. Johnson's partner did not testify and Johnson's testimony made no reference to any fears that she may have had. While the recitation by an officer that he observed a hard bulge, in the shape of a weapon, under a suspect's clothing, will generally suffice to justify the officer's fear of potential harm *(see, People v Behlin,* 83 AD2d 557, *appeal dismissed* 55 NY2d 729, *cert denied* 455 US 1025), there was no such testimony at bar. According to Johnson, Johnson's partner only told her that he felt a bulge in defendant's pants pocket which, when recovered, was observed to be a soft leather pouch. There was no indication that he saw any object prior to the frisk nor was there testimony that defendant had made any threatening gestures indicating a violent intention *(see, Ybarra v Illinois, supra; cf. People v Gonzales, supra,* in which the suspect, upon being told not to move and to keep his hands together, began to move one hand towards a pocket).

Thus, the frisk was impermissible. The evidence thereafter recovered, both from defendant's person and also from the rear seat of the patrol car, must be suppressed as the fruits of an illegal seizure *(People v Cantor,* 36 NY2d 106, 114). Mangano, J. P., Bracken, O'Connor and Weinstein, JJ., concur.