THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEREK
SMITH, Appellant.

Third Department, December 27, 1990

APPEARANCES OF COUNSEL

*James Rothe* for appellant.

*Gerald F. Mollen, District Attorney (James Schoemaker* of counsel), for respondent.

**OPINION OF THE COURT**

KANE, J. P.

Defendant appeals from a judgment convicting him of third degree criminal possession of a controlled substance, asserting only that County Court erred in denying his motion to suppress. We disagree and affirm.

The record reveals that police officers obtained a "no-knock" warrant authorizing the search of the first-floor rear apartment at 151 Front Street in the City of Binghamton, Broome County, and of its renters, Dorothy Haycook and Charlie Watt, for controlled substances and illegal handguns. The application for the warrant alleged that a quantity of cocaine and a small silver automatic handgun had been seen in the apartment within the preceding 10 days. The warrant was executed on the evening of April 14, 1989, with seven police officers gaining entry into the apartment by means of a battering ram. When the police officers entered the apartment, they found five people present including defendant, Haycook and Watt. By prearrangement, the police officers immediately "secured" all occupants by handcuffing them behind their backs and placing them face down on the floor. The police officers then proceeded to frisk all occupants except Haycook, who had been in the shower. The pat-down of defendant disclosed a hard object in his pants pocket, which the officer in charge of the operation removed. Upon inspection, the hard object was found to consist of two "clips", each consisting of 10 small perfume-type vials banded together into a bundle resembling a 35 millimeter film canister in shape. The vials were found to contain cocaine, giving rise to the instant charge.

Defendant moved to suppress the cocaine found on his person and inculpatory statements that followed his arrest. After a hearing, County Court denied the motion, finding that the police action was necessary to neutralize all occupants "for a brief moment" to enable the police to safely secure the premises. Defendant then entered a plea of guilty to the charge and now appeals.

Defendant argues that the police impermissibly exceeded the scope of the search warrant and pat-frisked him without a separate "particularized suspicion" of criminality. In our view, the police pat-frisk of defendant was justified, given the scope of the search warrant and the circumstances surrounding the exercise thereof. The warrant was based in part on averments

that a small automatic handgun was located on the premises, and the language in the warrant specifically allowed the police to search for it. The fact that the warrant was issued to search the premises, a private apartment, for illegal drugs could easily give rise to a heightened suspicion by the police that the handgun would be in the possession of anyone found on the premises (see, People v Gonzales, 86 AD2d 634, 635; see also, People v McRay, 51 NY2d 594, 605). Moreover, it should be noted that the mere presence of a defendant at the scene, under certain circumstances, may furnish a trained police officer with probable cause justifying a search (see, People v Martin, 32 NY2d 123, 125; cf., People v Ortiz, 103 AD2d 303, 306, affd 64 NY2d 997). This is particularly so when the search is for weapons and is predicated on "a police officer's reasonable suspicion that the individual to be searched is presently dangerous" (People v Behlin, 83 AD2d 557, 558, appeal dismissed 55 NY2d 729, cert denied 455 US 1025). In this instance, given the averred presence of drugs and a weapon on the premises, the police officers executing the warrant were entitled to protect themselves from a reasonably perceived harm by patting down defendant for weapons (see, People v Soler, 92 AD2d 280, 286). Moreover, the police officer who conducted the search possessed a clear, objective apprehension that the hard object he felt in defendant's pocket was a weapon. The search warrant application specifically noted the presence of a small handgun; under the circumstances, the search was justified (see, People v Behlin, supra).

Cases cited by defendant do not direct a different result. For example, in Ybarra v Illinois (444 US 85) the warrant authorized the search of a public tavern with the police conducting a cursory search for weapons without any predisposition, nor mention in the warrant, that there were weapons on the premises or that those searched possessed any weapons (see, supra, at 88). In Matter of James L. (133 AD2d 460) the challenged search into the defendant's pocket was for narcotics, not weapons (supra, at 461). Likewise, in both People v Chinchillo (120 AD2d 266) and People v Ballejo (114 AD2d 902) the search was conducted without any basis for concluding that the defendant was dangerous or carrying a weapon. Here, given that a handgun was seen on the premises prior to the search and that the police were entitled to secure the premises, together with the reasonable suspicion held by the searching officer that the hard object felt in defendant's

pocket was a weapon, the facts fully support the validity of the search and the items seized. Accordingly, we affirm.

MERCURE, J. (dissenting). I respectfully dissent. In my view, defendant's mere presence in the apartment identified in the search warrant did not justify a pat-down for weapons. In *Ybarra v Illinois* (444 US 85), the Supreme Court addressed the very issue presented on this appeal and held that "[t]he 'narrow scope' of the *Terry [Terry v Ohio,* 392 US 1] exception does not permit a frisk for weapons on less than reasonable belief or suspicion *directed at the person to be frisked,* even though that person happens to be on premises where an authorized narcotics search is taking place" *(Ybarra v Illinois, supra,* at 94 [emphasis supplied]). Contrary to the position of the majority, I cannot see that the addition of suspicion that a handgun may be present somewhere in the apartment changes the situation. Here, as in *Ybarra,* the frisk was not supported by a reasonable belief, based upon specific and articulable facts, that defendant was armed and presently dangerous *(see, supra,* at 92-93; *see also, Matter of James L.,* 133 AD2d 460, 461; *People v Chinchillo,* 120 AD2d 266, 268; *People v Ballejo,* 114 AD2d 902, 904). Inasmuch as the cocaine removed from defendant's pocket and the inculpatory statements which followed were fruits of the unlawful frisk, the suppression motion should have been granted.

Clearly, the requisite reasonable belief need be something more than vague or unparticularized hunches or guilt by association by virtue of defendant's "mere propinquity" to others independently suspected of criminality *(Ybarra v Illinois, supra,* at 91; *see, Sibron v New York,* 392 US 40, 62-63; *Matter of James L., supra; People v Chinchillo, supra; People v Ballejo, supra).* Here, it is uncontroverted that defendant was a complete stranger to the police officers. They did not become aware of his presence until they entered the apartment and even then had no reason to believe that he had any legal or possessory interest in or connection of any kind to the premises *(see, People v Laskaris,* 82 AD2d 34, 41; 2 LaFave, Search and Seizure § 4.9 [e], at 309-310 [2d ed]; *cf., Michigan v Summers,* 452 US 692 [authorizing detention of *owner* during search of house]; *People v Soler,* 92 AD2d 280, 286-287 [authorizing pat-down of *renter* of premises searched]). Moreover, there is no indication in the record that defendant made any effort to flee or to hide or rid himself of any object *(cf., People v Ortiz,* 103 AD2d 303, 306, *affd* 64 NY2d 997), or that he

placed a hand in his pocket, made a furtive gesture or otherwise aroused suspicion that he possessed a weapon or intended to commit an assault *(see, Ybarra v Illinois, supra,* at 93).

I reject the contention that the inherent danger of police contact with narcotics traffickers, people apt to be armed and dangerous, justified the action taken by the police here. That very concern was raised by the dissent and obviously rejected by the majority in *Ybarra (see, supra,* at 97, 106-107). Moreover, the factual background of this case undercuts the argument. First, the application for the search warrant provides no competent evidence that Dorothy Haycook, Charlie Watt or any other occupant of the apartment was a drug dealer. This is not a case where methodical surveillance and undercover police activity established an ongoing trade in narcotics *(cf., People v Soler, supra,* at 283). Rather, we have the conclusory statement of an unnamed informant that an unstated quantity of drugs and a handgun had been viewed in the apartment, supporting, at most, the conclusion that Haycook and Watt were drug users and may be armed and dangerous. Second, this is not a situation where the police found themselves outnumbered to the extent that extreme measures were required for the officers to "exercise unquestioned command of the situation" *(Michigan v Summers, supra,* at 703). Here, the seven police officers comfortably outnumbered the five individuals found in the apartment to the point, in fact, where one officer could have guarded each occupant and still left two investigators free to conduct the search. Finally, it is noted that defendant was forcibly seized and frisked before the police officers made even a preliminary inquiry as to his identity or purpose for being in the apartment *(see, United States v Clay,* 640 F2d 157, 161; *People v Chinchillo,* 120 AD2d 266, 268, *supra; People v Ballejo,* 114 AD2d 902, 904, *supra).*

Moreover, even if concern that a weapon may be present in the apartment justified a relaxation of the "particularized suspicion" requirement *(see, Ybarra v Illinois,* 444 US 85, 91, *supra),* the fact remains that this was no mere "pat-frisk". Rather, the police conduct constituted a de facto arrest, supportable only upon a showing of probable cause to believe that defendant had committed a crime, clearly not present here *(see, People v Fripp,* 85 AD2d 547, *affd* 58 NY2d 907). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the

officer's suspicion in a short period of time" *(Florida v Royer,* 460 US 491, 500; *see, Dunaway v New York,* 442 US 200, 209-212).

Here, the legitimate objective of determining which of the occupants was Watt could have been accomplished by mere inquiry, as the police officers did *after* handcuffing and searching all of the male occupants. The concern that any or all of the occupants might be armed could have been resolved by a traditional *Terry* pat-down of the males, at gunpoint if necessary, an easy task for seven armed police officers. Any fear that an occupant might reach for a weapon secreted somewhere in the apartment could have been obviated by directing those other than Watt and Haycook to leave after they identified themselves and were found to be unarmed. Further, the People may not counter the claim that the intrusion was excessive with the assertion that a mere frisk would have uncovered the same evidence at any rate. "In such a case, there is no escaping the fact that the suspect was subjected to an intrusion in violation of the Fourth Amendment, and that violation cannot be overlooked merely because hindsight indicates the excessive part of that intrusion would not have been necessary" (3 LaFave, Search and Seizure § 9.2 [e], at 372 [2d ed]; *see, United States v Cunningham,* 424 F2d 942, 943, *cert denied sub nom. Thaxton v United States,* 399 US 914).

As for the majority's conclusion that the police officer who conducted the search possessed a "clear, objective apprehension that the hard object he felt in defendant's pocket was a weapon", it is noted that evidence obtained as the result of an illegal detention may not be used to justify the search at its inception. Moreover, the police officer who conducted the search candidly testified that he did not identify the hard object as a weapon but, rather, removed it "for safety purposes to determine what [it] was". Considering the size of the object, approximately 1½ inches high and two inches in diameter, and the testimony presented at the hearing, there was no basis for a finding that the police officers had reason to believe that it was a handgun or other dangerous weapon.

For the foregoing reasons, I would reverse the judgment of conviction and grant the motion to suppress.

MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur with KANE, J. P.; MERCURE, J., dissents and votes to reverse in a separate opinion.

Judgment affirmed.