**UNITED STATES of America**

**v.**

**Miguel MUNOZ, a/k/a "Beeper", Rodolfo Rodriguez, Enrique Houellemont, a/k/a "Ereppa", Daniel Bretton, a/k/a "Raoul", Cristo Rey Ramirez–Pena, a/k/a "Bacalao", Victor Alberto Gil, a/k/a "Vitico", Nelson Omar Tabar–Laro, Hector Garcia, a/k/a "Jabao", Pedro Pizzarro, a/k/a "Bolin", and Marilyn Montalvo, a/k/a "Ramona Munoz", Defendants.**

**No. S 90 Civ. 15 (RPP).**

United States District Court,
S.D. New York.

June 20, 1990.

See also 736 F.Supp. 502.

Otto Obermaier, U.S. Atty., S.D.N.Y., Patrick Fitzgerald, New York City, for U.S.

Aranda & Guttlein, Jorge Guttlein, New York City, for Miguel Munoz.

Orden & Cohen, Joel Cohen, New York City, for Rodolfo Rodriguez.

Joy L. Vastola, New York City, for Enrique Houellemont.

Christopher W. Chan, New York City, for Daniel Bretton.

Joseph J. Olivero, Rockaway Park, N.Y., for Cristo Rey Ramirez–Pena.

Mordkofsky, Goldstein & Weinstein, Barry Weinstein, Bronx, N.Y., for Victor Alberto Gil.

Michael Bachner, New York City, for Nelson Omar Tabar–Laro.

Marino & Veneziano, New York City, for Hector Garcia.

Hector Garcia, pro se.

Charles Brown, New York City, for Pedro Pizzarro.

Ted Delvalle, New York City, for Marilyn Montalvo.

### OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a motion to suppress certain evidence on the grounds that defendant Nelson Omar Tabar–Laro (Tabar–Laro) was arrested on December 26, 1989 by special agents of the Federal Bureau of Investigation (FBI) without probable cause.

The Court resolves this motion without a hearing because the parties do not dispute any material facts. Tabar–Laro's affidavit states that on December 26, 1989, he arrived at a location in New York City as a passenger in "a white jeep-type vehicle" (the Jeep) driven by defendant Miguel Munoz (Munoz). Tabar–Laro Aff. at 2, ¶¶ 7–10 (May 12, 1990). The other passengers were defendants Enrique Houellemont (Houellemont) and Hector Garcia (Garcia). *Id.* At this location, Munoz had a conversation with defendant Rodolfo Rodriguez (Rodriguez). *Id.* "Munoz then left the jeep, went to a phone booth, and returned. Garcia then left the jeep. Munoz then drove the jeep away." *Id.* Shortly thereafter the agents pulled the Jeep over and arrested the occupants including Tabar–Laro.

Whether there was probable cause for the arrest depends on how that sequence of events and other events which occurred in close proximity to them appeared to the arresting agents.

> Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonable trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested.

*United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990).

The affidavit of Special FBI Agent Robert Daniel Shea sets forth the knowledge and information in the arresting agents' possession at the time of the arrest. The FBI was aware that Rafael Gonzalez (Gonzalez) was being held captive in New York City in connection with an aborted sale of narcotics. They were also aware that Gonzalez's captors had placed several calls from New York City to Gonzalez's relatives in Pennsylvania threatening violence to Gonzalez unless a ransom was forthcoming. During the telephone conversations the voices of others giving instructions to Gonzalez could be heard in the background. In addition, Gonzalez had spoken during these conversations referring to his captors in the plural. Shea Aff. at 1–2, ¶ 2 (May 14, 1990).

The kidnappers arranged with Gonzalez's brother, who was acting in cooperation with the FBI, for the payment of a ransom. Gonzalez's brother was instructed to arrive on December 26, 1989 at a restaurant at 177th Street and Broadway and then dial a beeper number. *Id.* at 2–3, ¶ 3. FBI agents were in a car across the street from the restaurant and had a listening device attached to Gonzalez's brother. *Id.* After Gonzalez's brother dialed the beeper number, the agents saw defendant Rodriguez arrive and meet with Gonzalez's brother at approximately 5:45 P.M. *Id.* Rodriguez then threatened Gonzalez's brother that he would have Gonzalez killed. *Id.*

At approximately 5:51 P.M., the agents observed Rodriguez leave the restaurant to speak to Munoz, the driver of the Jeep parked across from the restaurant. *Id.* at 3–5, ¶ 4. Defendant Tabar–Laro was seated in the Jeep. Then at 5:53 P.M., Rodriguez and Munoz went to a pay telephone on the street and made a call. *Id.* At 5:58 P.M. Gonzalez's brother and Munoz were observed utilizing the same pay telephone. *Id.* Simultaneously, Gonzalez's relatives received a call from an unidentified Hispanic male who then put Gonzalez's brother on the telephone. *Id.* at 5, ¶ 5. While on the telephone, Gonzalez's brother stated that he was ill, which was a prearranged signal to the FBI that he believed his life to be in danger. *Id.* After the telephone conversa-

tion ended, Rodriguez and Gonzalez's brother went to Gonzalez's brother's car and Munoz returned to the Jeep. *Id.* at 5–6, ¶¶ 6, 7. Both vehicles drove off towards the Bronx, where the FBI, on the basis of traced telephone calls, believed Gonzalez was being held. *Id.* While the vehicles were proceeding north on Audubon Avenue with the Munoz/Tabar–Laro/Houellemont Jeep trailing less than one block behind the vehicle carrying Gonzalez's brother and Rodriguez, the agents stopped both vehicles and arrested the defendants Rodriguez, Munoz, Houellemont and Tabar–Laro. *Id.*

This recitation of the agents' observations and knowledge is not contradicted by Tabar–Laro. There can be no doubt that there was probable cause to arrest Rodriguez as a kidnapper. The issue is whether there was probable cause to arrest Tabar–Laro, who was observed doing nothing but sitting as a passenger in the Jeep. Association with criminals by physical proximity, conversation, or companionship is insufficient to support probable cause. *United States v. Patrick,* 899 F.2d 169, 174–175 (Weinstein, J., dissenting) (citing *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) and *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)); *United States v. Moreno,* 897 F.2d 26, 31 (2d Cir.1990). The Court finds that the agents' observations and knowledge constituted probable cause for believing that Tabar–Laro "was not just a mere innocent traveling companion but was traveling *and* acting in concert" with Rodriguez in the kidnapping. *United States v. Patrick,* 899 F.2d at 172.

The agents were aware that several individuals were probably involved in the kidnapping. The agents also were aware that the kidnappers had threatened to engage in violence. To carry out such threats and for purposes of assuring Rodriguez's security during the expected delivery of the ransom it was logical for the agents to suspect that several members of the kidnapping team would arrive at the restaurant. The telephone calls and interactions between Rodriguez and Munoz raised probable cause that Munoz was part of the kidnapping team.

Munoz's accompanying Gonzalez's brother at the pay telephone confirmed this. And then when Munoz drove off in the same direction as Rodriguez, there was probable cause to believe that the other men in the Jeep with Munoz were involved in assuring security for Rodriguez. At the time of arrest, Tabar–Laro was no longer just a bystander in the eyes of the objective "person of reasonable caution," he had appeared to be privy to the Rodriguez/Munoz 5:51 P.M. conversation at the Jeep and he was now part of a car full of men whose function was to serve as security for the kidnapping or ransom.

Tabar–Laro's argument that he was in the car only because he had asked Munoz for a ride is a question for the jury to decide. The Court denies Tabar–Laro's motion because the arrest was made after the agents possessed sufficient information and knowledge to support a probable cause belief that Tabar–Laro's sitting in the car constituted active participation in the kidnapping.

IT IS SO ORDERED.