11-5184-cv
*Benn v. Kissane et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1.  When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of January, two thousand thirteen.

PRESENT:

> JOSÉ A. CABRANES,
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
>
>       *Circuit Judges.*

_____

MONIQUE BENN,

                *Plaintiff-Appellant,*

        v.                                                          No. 11-5184-cv

DETECTIVE JOHN KISSANE, DETECTIVE
CHRISTOPHER BOLLERMAN, FIRE MARSHALL
MICHAEL FARRELL, FIRE MARSHALL STEPHEN
M. CALCUTTI, FIRE MARSHALL STEPHEN
O'KEEFE, THE CITY OF NEW YORK,

                *Defendants-Appellees.*[*]

_____

---

[*] The Clerk of Court is directed to amend the caption as shown above.

FOR PLAINTIFF-APPELLANT:    KENECHUKWU C. OKOLI, Law Offices of
K.C. Okoli, P.C., New York, NY.


FOR DEFENDANTS-APPELLEES:  SUSAN B. EISNER (Francis F. Caputo,
Alexandra Corsi, *on the brief*), *for* Michael A.
Cardozo, Corporation Counsel of the City of
New York, New York, NY.

   Appeal from a judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *Chief Judge*).


   **UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.


   In this suit, plaintiff-appellant Monique Benn brings claims of false arrest and malicious prosecution against Detectives John Kissane and Christopher Bollerman of the New York Police Department.[1] In particular, Benn argues that Detectives Kissane and Bollerman lacked probable cause to arrest her for arson and homicide in connection with a house fire that took place in Queens County, New York, on the evening of July 18, 2006.  Benn acknowledges that she was at the site of the fire and was removing objects from a friend's apartment where the fire started, but she asserts her innocence and alleges that the real culprits were Gary Mariner and Bryan Gibson—two men whom she did not know but who were associated with her friend, and who told police officers that Benn confided in them that she had started the fire.  Following an investigation, Detective Kissane arrested Benn on October 4, 2006.  A state grand jury indicted Benn for deliberate-indifference murder, reckless endangerment, arson, and criminal mischief.  Following a trial, Benn was found not guilty of all pending charges on February 5, 2009, having been incarcerated for about 15 months.  Benn subsequently brought this suit under 42 U.S.C. § 1983.


   In a memorandum and order dated November 10, 2011, the District Court granted summary judgment to Detectives Kissane and Bollerman on all of Benn's claims.  With regard to the false-arrest claim, the District Court concluded that "it was reasonable for the defendants to credit the statements of Mariner and Gibson, in which they admitted to damaging the apartment, and both said that Benn admitted to starting the fire." Dist. Ct. Op. at 6.  The Court explained that "the detectives investigated the arson for months before arresting Benn, and interviewed several witnesses who corroborated most of Mariner's and Gibson's account of what happened, including Benn's presence at the scene and the destruction of the property." *Id.* at 8.  Discussing the testimony of Harold Williams, upon which Benn heavily relied in her arguments, the Court noted

---

[1] As noted in the District Court's opinion, the plaintiff abandoned her claims against the other defendants in this case. *See* Dist. Ct. Op. at 1 n.1.  Accordingly, all claims against those defendants are waived. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (issues not raised on appeal are waived).

2

that "[t]he fact that Benn might not have been the last to leave the house did not prove, or even suggest under the facts of this case, that she did not start the fire." *Id.* The Court then concluded that "[p]robable cause supported Benn's arrest, and the defendants are therefore entitled to summary judgment on her false arrest claim." *Id.* at 9.

With regard to the malicious-prosecution claim, the District Court concluded that because no evidence negated the probable cause existing at the time of arrest, Benn had not presented sufficient evidence for that claim to go to a jury. *See id.* ("For the same reasons that the defendants had probable cause to arrest Benn, the Court finds that there was probable cause to initiate criminal proceedings against her."). The Court reiterated that the testimony of Harold Williams did not negate the existence of probable cause.

Benn appeals the District Court's grant of summary judgment with respect to her claims against Detectives Kissane and Bollerman. The defendants defend the District Court's decision on the merits, and they assert in the alternative that they are entitled to qualified immunity. We assume the parties' familiarity with the facts and procedural history of this case.

## DISCUSSION

### A.

We review *de novo* an award of summary judgment. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

In analyzing the record on appeal from a grant of summary judgment, we "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher*, 604 F.3d at 720. Benn argues that the District Court misapplied this standard because it "failed to believe the evidence of the Appellant and [to] draw all reasonable inferences in the light most favorable to Appellant as the non-moving party to the motion." Appellant's Br. at 16-17. Benn further asserts that by "resolv[ing] material issues of fact in favor of the moving party," the District Court acted "contrary to governing law." *Id.* at 34. Before we proceed to the merits, a point of clarification is in order regarding how the summary judgment standard applies in this context, where a court considers the objective reasonableness of a probable-cause determination.

3

As mentioned above, a federal court considering a summary judgment motion must resolve material factual disputes in favor of the non-moving party. *Fincher*, 604 F.3d at 720. But "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a probable-cause determination in a false-arrest or malicious-prosecution suit, the relevant factual inquiry is to determine what information the officer knew at the time of arrest or outset of prosecution. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Ornelas v. United States*, 517 U.S. 690, 696 (1996). That information is all that matters. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153. And whether the substance of the information known to the officer is *actually true* is also irrelevant; all the court need decide is "whether the officer had probable cause to *believe*" that the person committed a crime. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (emphasis added).

Although determining what the officer knew at the relevant time is an issue of fact, whether those known circumstances satisfy the probable-cause standard is a mixed question of law and fact, *see Ornelas*, 517 U.S. at 696–97, and "'[t]he ultimate determination of whether probable cause . . . existed is essentially a legal question,'" *Hui Lin Huang v. Holder*, 677 F.3d 130, 135 (2d Cir. 2012) (quoting *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990)). To be sure, the Supreme Court has admonished that "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances," and the Court has emphasized that "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Pringle*, 540 U.S. at 370–71 (quotation marks omitted). Probable cause, in other words, is a *standard* and not a bright-line *rule*. Nonetheless, the critical point here is that the probable-cause inquiry is legal in nature, asking "whether the[ ] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas*, 517 U.S. at 696; *see also Hui Lin Huang*, 677 F.3d at 135 ("What the law's legal construct of a reasonable person would believe or do under the particular circumstances of a case is normally a question of law . . . .").

Accordingly, a court considering a summary judgment motion in a false-arrest or malicious-prosecution case must construe in favor of the non-moving party any factual disputes regarding what circumstances were known to the officer at the relevant time. After that, however, the court must undertake a neutral, legal analysis of whether those (assumed) circumstances satisfy the probable-cause standard. *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007). In other words, the court should resolve in favor of the non-moving party any disputes about what information the officer knew, but it should *neutrally* determine whether that information gave rise to probable cause. An objectively reasonable police officer applying the probable-cause standard

4

would not automatically or necessarily construe all available information in favor of a particular individual, and neither should the court.

Moreover, state-officer defendants in § 1983 suits "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection, which we style "qualified immunity," is based on "the need to avoid the impossible burden that would fall upon all our agencies of government if those acting on behalf of the government were unduly hampered and intimidated in the discharge of their duties by a fear of personal liability." *Filarsky v. Delia*, 132 S. Ct. 1657, 1662 (2012) (quotation marks omitted).

"Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins*, 478 F.3d at 87 (internal quotation marks omitted). The second of these categories applies "if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity therefore allows for "reasonable mistakes" in an officer's application of law to fact, *Saucier v. Katz*, 533 U.S. 194, 205 (2001), and it protects "'all but the plainly incompetent or those who knowingly violate the law,'" *id.* at 202 (quoting *Malley*, 475 U.S. at 341).

In the context of probable-cause determinations, the applicable legal standard is clear, but there are "limitless factual circumstances" that officers must confront when applying that standard. *Id.* at 205. Accordingly, "there can frequently be a *range* of responses to given situations that competent officers may *reasonably* think are lawful." *Walczyk*, 496 F.3d at 155 n.16. An officer is shielded from liability "if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins*, 478 F.3d at 87 (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995)). "The essential inquiry . . . is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Id.*

**B.**

Having reviewed the record *de novo*, we affirm the District Court's opinion for substantially the reasons stated in its well-reasoned memorandum and order of November 10, 2011. We need not reach the issue of whether probable cause actually existed, however, because the information known to the officers at the relevant times plainly gave rise to an "arguable" case that the probable cause standard was satisfied in these circumstances. *See Pearson v. Callahan*, 555 U.S. 223 (2009)

(holding that the qualified-immunity inquiry may precede consideration of the merits); *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970) (explaining that an appellate court may affirm the judgment on an alternative ground).

Combined with the other available evidence, Mariner's and Gibson's accounts of Benn's admission created at least an arguable basis for concluding that probable cause existed at the time of her arrest. Moreover, Harold Williams's testimony, though perhaps helpful to Benn's defense, did not exculpate her of criminal responsibility. Even assuming the truth of Williams's statements—which we need not do, given that a reasonable officer would not automatically or necessarily construe evidence in favor of a particular individual—we agree with the District Court's assessment that Benn still could have been criminally culpable for setting the fire. Benn relies heavily on the New York Fire Department's conclusion that the fire had two distinct origins, but it obviously would not be difficult for an individual to set two fires in the same building, or for Benn to have been legally culpable even if Mariner and Gibson had physically started the fire. For the same reasons, arguable probable cause existed for Benn's prosecution. Moreover, Benn failed to rebut the presumption of probable cause created when she was indicted by the grand jury. *See Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983).

## CONCLUSION

We have considered all of Benn's arguments on appeal and find them to be without merit. Accordingly, for the reasons stated above, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk